# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action No. 07-89-JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MARZETTE KING, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S PRE-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE, STATEMENTS AND IDENTIFICATIONS

COMES NOW, the United States, by and through its undersigned counsel, Colm F.

Connolly, United States Attorney, and Martin C. Meltzer, Special Assistant United States

Attorney, and respectfully submits the following response in opposition to Defendant's Motion to

Suppress Physical Evidence and Statements. For the following reasons, Defendant's Motion

should be denied:[1]

## I.    Government's Proposed Findings Of Fact.

1.    The Government will present evidence at the hearing which will show that on July

31, 2007, Wilmington Police Officers were on routine patrol in the area of 30th Street and Market

in Wilmington, Delaware, which is known as a high crime area. They observed a white four-door

Chevrolet Caprice bearing a Delaware registration number of 740925 pulling out of a gas station

---

[1]The facts contained in this opposition are based on the evidence the Government expects
will be introduced at any hearing on Defendant's Motion. Only those facts necessary to respond
to Defendant's Motion are stated. The Government will supplement its opposition with evidence
from the record after the hearing.

parking lot. The Officers conducted a wanted/stolen car check on the vehicle which revealed that the vehicle was transferred on January 19, 2007. The check also revealed that there was no new registration or transfer of the plates recorded in violation of 21 *Del.C.* 21 § 2509, failing to register a vehicle within 30 days of transfer. As a result of the violation the Wilmington Police stopped the defendant's vehicle.

2.      After stopping the defendant's vehicle, one of the officers asked the defendant/driver (later identified as Marzette King) for his license, registration, and proof of insurance. The defendant did not have any of the above documents in his possession in violation of *21 Del*. C. §§ 2509, 2756, & 2119.

3.      The officers then submitted the defendant's name to the LEISS system and received information that the defendant's drivers licence was suspended, and there was a capias out for him with a caution code for the possibility of being armed and dangerous. As a result of the investigation, the defendant was taken into custody and placed in the back of the patrol vehicle.

4.      Ptlm. Scholl contacted DATA for a tow truck. The vehicle was going to be towed due to the defendant driving while suspended, having no proof of insurance, and failing to register the vehicle. An inventory search was conducted by M./Cpl Armorer pursuant to the Wilmington Police Department policy.

5.      During the inventory search of the vehicle, a dark gray/black 9mm Ruger automatic handgun model P89 was found under a large dark gray plastic bag in the trunk area. The handgun was loaded with eleven rounds of 9mm ammunition with one live round in the chamber

2

6.     While the handgun was being secured, the defendant who was sitting in the back of the patrol car yelled out, "I did not know where it came from, I just bought the vehicle four days ago and had not checked in the trunk." At no time, prior to the defendant's spontaneous and unsolicited statement was he interrogated or questioned about the handgun by the police officers.

7.     The defendant was transported to Wilmington Police Station and processed. ATF Special Agent Patrick Fyock responded to Central and in the presence of the arresting officers read the defendant his *Miranda* Rights. The defendant stated that he understood his rights, then signed an ATF waiver form and agreed to be interviewed. The defendant stated he bought the car four days ago for four hundred dollars, around the unit block of 31st Street Wilmington, Delaware, from an unknown male whom he described as "slim and dusty looking" around 35 years old. After the sale the defendant drove the seller to Philadelphia. He also said that the title of the vehicle is in the pocket of his coat at his home.

8.     As a result of the defendant being a probationer, an administrative search was approved and conducted at his home. The title of the vehicle was located in the pocket of his coat as he indicated.

9.     During the follow-up investigation, as a result of the Mirandized statements given by the defendant of the description of the seller of the vehicle the ATF agent was able to locate the individual who sold the vehicle to the defendant.

10.    Upon locating the prior owner, the ATF agent first questioned him about the sale of the above referenced vehicle. The witness said he sold his white four-door Chevrolet Caprice for four hundred dollars, which was consistent with the statements given by the defendant.

3

**II.    Government's Proposed Conclusions Of Law.**

    **A.    The Wilmington Police Officer Had Reasonable Suspicion To Believe That Defendant's Vehicle Violated Delaware's Registration Law.**

      To conduct an investigatory traffic stop, police officers must have reasonable suspicion to believe that an individual has violated the law. *See, e.g., United States v. Delfin-Colina,* 464 F.3d 392, 396-98 (3d Cir. 2006). Here, the evidence will show that the Wilmington Police Officers had reasonable suspicion to believe that the defendant had violated 21 *Del. C.* § 2503, by failing to transfer title and register the vehicle. Delaware counts have consistently upheld vehicle stops for motor vehicle violations. *Delaware v. Scott,* Crim. A. Nos. IK04-02-0299-304, 2004 WL 1790136, at *2 (Del. Super. Ct. 28, 2004) (holding that officers had probable cause to stop vehicle for violation of 21 *Del. C.* § 2126 because temporary registration permit was not clearly visible in that it was attached to the rear window); *United States v. Leal,* No. 06-1447, 2007 WL 1655658, at *1 (3d Cir. June 8, 2007) (upholding stop of vehicle based on violation of Pennsylvania's restrictions on window tinting); *United States v. Kennedy,* No. 06-591, 2007 WL 1366967, at *1-2 (E.D. Pa. May 2, 2007) (upholding stop of vehicle based on violation of Pennsylvania's restrictions on window tinting); *See, e.g., United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995) ("However, a stop to check a driver's license and registration is constitutional when it's based on an 'articulable and reasonable suspicion that . . . either the vehicle or an occupant' has violated the law.") (quoting *Delaware v. Prouse,* 440 U.S. 648, 663 (1979)). Accordingly, Defendant's motion to suppress based on a purported illegal vehicle stop should be denied.

4

**B.    The Defendant's Pre-*Miranda* Statements Are Admissible Because The Defendant Was Not Interrogated During The Traffic Stop.**

The defendant's next argument is that the District Court should suppress the statements he made during and subsequent to the stopping of his vehicle. At the stop, after the defendant was arrested, he shouted out several statements. These statements were not solicited by the arresting officers nor were they given in response to any questions. Therefore, *Miranda* Warnings were not required and the defendant's Fifth Amendment rights were not violated.

*Miranda* protections are triggered only when the defendant is both in custody and is being interrogated. *United States v. Lawrence,* 952 F.2d 1034,1036 (8th Cir.). "Interrogation is expressed questioning in words or actions that the police should know are reasonable likely to elicit an incriminating response...." *Rhode Island v. Innis* 446 US 291, 301 (1980). The defendants's vehicle was stopped as a result of a motor vehicle violation. The defendant did not have a driver's license, registration or proof of insurance. The defendant also had a capias out for his arrest. As a result, he was taken into custody and placed in the rear of the police vehicle.

During the inventory inspection of the car, a firearm was found. At that point the defendant yelled out unsolicited statements. Even though the defendant was in custody he was not questioned about the handgun. It is settled case law that a voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without giving *Miranda* Warnings. *Innis,* 446 US at 299. *Miranda* warnings are not required before a volunteered or spontaneous statement. *Miranda v. Arizona* 3804 US 436, 444 (1966).

After the defendant's arrest, he was taken to the Wilmington Police Station for

5

processing. As a result of the defendant's prior felony conviction and having been found in possession of a firearm, he was referred to ATF Special Agent Patrick Fyock. Upon arrival, the ATF agent gave the defendant his *Miranda* Warnings in front of the Wilmington Police. After the warnings were given, the defendant was presented with and signed an ATF waiver form. The defendant then voluntarily, intelligently and with knowledge waived his *Miranda* Rights and gave additional statements to the police officers.

The statements made by the defendant at the vehicle stop, as well as the statements made by the defendant at the Wilmington Police Station, were not in violation of the defendant's Fifth Amendment rights. The statements he made at the vehicle stop were spontaneous and outside the parameters of *Miranda* and the statements he made at the Wilmington Police Station were given after he was provided with *Miranda*, and signed a waiver. All the actions taken by the defendant was voluntary and not coerced. Therefore his Fifth Amendment Rights were not violated and all his statements should be admitted.

### C.    Under the Totality of the Circumstances, The Pretrial Identification, and Identification at Trial, of the Defendant is Admissible.

The defendant claims that as a result of an allege suggestive photo identification that the out-of-court and any in-court identification of the defendant by the seller of the vehicle, should be suppressed. The fact that an out-of-court photographic identification may be suggestive does not automatically preclude an in-court identification of that witness. The Supreme Court in *Warren v. Biggers* 409 US 188, 199, (1979) ruled that the central question as to admission of an suggestive out-of-court identification relies upon "Whether under the 'totality of the circumstances,' the identification was reliable even though the confrontation procedure was

suggestive." The lynchpin factor is reliability. "Because reliability is the lynch-pin in determining the admissibility of the identification testimony... we must determined whether under, the totality of the circumstances, the suggestiveness created a substantial likelihood of misidentification." *United States v. Stevens,* 935 F.2 1380, 1391 (3d. Cir. 1991).

The Court in *Biggers* also stated the facts to be considered in evaluating the reliability of the identification. These facts include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

In the case at bar, the witness was not a victim of a crime therefore he was not nervous or under stress. The witness and the defendant conducted a business transaction involving the sale of a car, which involves negotiations and personal interaction. Such a transaction involves a certain amount of attention for more than a fleeting moment. After the transaction, the defendant drove the witness to Philadelphia from Wilmington which is approximately a forty minute drive, providing the witness ample time and opportunity to observe the defendant. Furthermore, the time between the sale of the car and the ATF agent's interview with the witness was short period of approximately ten days from when the witness was shown the picture of the defendant.

In support of reliability is the fact that the defendant provided additional evidence which supported the-out-of court identification. The defendant gave a description of the seller. He stated that he bought the vehicle for four-hundred dollars from an unknown white male, who was "slim, dusty looking" around thirty-five years old. Upon recovering the title of the vehicle, an ATF agent assisting in the investigation, went to the home of the original owner of the vehicle where

7

he received information that led him to the individual who sold the vehicle to the defendant. The ATF agent found the defendant's description of the witness as a white, "slim, dusty looking" male at approximately thirty-five years old was quite accurate. The witness' workplace and his occupation as a welder would provide a dusty environment accounting for his appearance.

Before the agent showed the witness the photograph of the defendant, he asked about the transaction with the vehicle. The witness stated that he sold his white four-door Chevrolet Caprice for four-hundred dollars to a black male. The description of the car, the price and who was involved in the transaction, was consistent with what the defendant stated about the sale of the vehicle supporting the reliability of the identification. The witness was then provided with a photograph of the defendant, to which he (the witness) was eighty-percent sure the defendant was to whom he sold the car.

There is little question or doubt that the defendant is the person to whom the witness sold the car. The "totality of the circumstances" support the reliability of the identification of the defendant by the seller of the vehicle. Therefore, the identification should not be suppressed.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By:_____ /s/ Martin c. Meltzer_____
        Martin C. Meltzer (ID # 3053)
        Special Assistant United States Attorneys
        The Nemours Building
        1007 Orange Street, Suite 700
        Wilmington, DE 19899-2046
        (302) 573-6277

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
    vs.                      )        Criminal Action No. 07-89-JJF
                             )
MARZETTE KING,               )
                             )
        Defendant.           )

## ORDER

AND NOW, this _____ day of _____, 2007,

upon consideration of Defendant's Motion to SUPPRESS PHYSICAL EVIDENCE,

STATEMENTS, AND OUT-OF COURT AND IN-COURT IDENTIFICATIONS, and the

government's response thereto, it is hereby ORDERED that defendant's motions are DENIED.

By the Court:

_____
Hon. Joseph J. Farnan
United States District Court