IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,        :
                                 :
        Plaintiff,                :
                                 :
    v.                           :  Criminal Action No. 07-89-JJF
                                 :
MARZETTE KING,                   :
                                 :
        Defendant.                :
                                 :

Colm F. Connolly, United States Attorney, and Martin C. Meltzer, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Luis A. Ortiz, Esquire, Federal Public Defender, of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

## MEMORANDUM OPINION

November 29, 2007
Wilmington, Delaware



*Joseph J. Farnan Jr.*
Farnan, District Judge.

Pending before the Court is Defendant's Motion To Suppress Physical Evidence And Statements (D.I. 14) and Defendant's Motion To Suppress Out-Of-Court Identification And To Preclude Identification At Trial (D.I. 15).[1] For the reasons discussed the Court will deny both Motions.

## I.   BACKGROUND

On June 26, 2007, Defendant, Marzette King, was indicted on one count of being a felon in possession of a loaded firearm in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2).  On August 17, 2007, Mr. King filed the instant Motion To Suppress Physical Evidence And Statements contending that the May 31, 2007 traffic stop of his vehicle and subsequent search of the vehicle were illegal.  As a result, Mr. King requests the Court to suppress all physical evidence seized from his vehicle, including the firearm in question, as well as the statements he made to police following his arrest.  By separate Motion To Suppress Out-Of-Court Identification And To Preclude Identification At Trial, Mr. King also moves to suppress all out-of-court and in-court identifications of Mr. King by witnesses who were located by the

---

[1]   In addition, the Government has filed a Motion To Amend The Government's Pre-Hearing Response To Defendant's Motion To Suppress Physical Evidence Statements And Identifications (D.I. 18) which corrects certain errors contained in the Government's initial Response.  The Motion is unopposed, and therefore, it will be granted.

1

police as a result of Mr. King's statements. The Court conducted an evidentiary hearing on October 1, 2007.

By his Motion, Mr. King contends that the police lacked probable cause and/or reasonable suspicion to conduct the May 31, 2007 traffic stop. Mr. King further contends that the photo identification procedures used by the police to obtain the eye-witness identification of Mr. King were unduly suggestive.

## II. FINDINGS OF FACT

1. On May 31, 2007, Master Corporal Richard Armorl and his partner Patrolman Scholl, both Wilmington police officers, were on routine patrol in a marked patrol car in the vicinity of 30th and Market Streets, an area recognized by the officers to be a high crime area. (Tr. 4, 17, 35.) The officers observed a white four door Chevrolet Caprice bearing license plate 740925 leaving the parking lot of a gas station. (Id. at 4.) The vehicle was being driven by Mr. King.

2. The officers followed the vehicle and conducted a wanted/stolen car check on the vehicle. The check revealed that the vehicle was transferred on January 19, 2007; however, no new registration was obtained for the vehicle and no transfer of plates had been recorded. (Id. at 5-6, 21.) If the vehicle had been registered, the computer would have revealed the new registration information. (Id. at 26-27.) As a result, Master Corporal Armorl recognized that the vehicle was unregistered

2

based on the change in ownership in violation of 21 Del. C. § 2503. (Id.)

3. After stopping the vehicle for the registration violation, the officers asked Mr. King for his driver's license, registration and proof of insurance. Mr. King informed the officers that he did not have any of these documents in his possession. (Id. at 6-7.) The failure to possess these documents is a violation of 21 Del. C. §§ 2509, 2756 and 2119.

4. Upon obtaining Mr. King's name and date of birth, the officers conducted a wanted check through the computer system. The officers learned that Mr. King's driver's license was suspended, and that a capias was issued for his arrest in connection with several traffic violations. The computer system also provided the officers with a caution code indicating that Mr. King could be armed and dangerous. (Id. at 7-8.)

5. Mr. King was handcuffed, searched and placed in custody in the back of the officers' patrol car. (Id. at 8.)

6. Thereafter, Patrolman Scholl contacted the Data Center to arrange for a tow truck to pick up the vehicle. An inventory search of the vehicle was conducted by Master Corporal Armorl pursuant to the policies of the Wilmington Police Department. (Id. at 8-9.)

7. The search of the vehicle uncovered a dark gray/black 9mm Ruger automatic handgun model P89, which was found under a

large, dark gray plastic bag in the trunk. The gun was loaded with eleven rounds of 9mm ammunition and one live round in the chamber. The gun was secured by Patrolman Scholl. (Id. at 9, 34.)

8. Mr. King was not questioned by the officers at any time after his arrest. However, Mr. King spontaneously yelled to the officers that the gun did not belong to him. (Id. at 10-11.)

9. Defendant's vehicle was towed and he was transported to the Wilmington Police Department for processing. Mr. King was not questioned at any time during the transport or during his processing. (Id.)

10. Master Corporal Armorl then contacted Special Agent Patrick Fyock of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Agent Fyock identified himself to Mr. King, but did not ask him any questions until after he received his Miranda warnings. Agent Fyock then mirandized Mr. King in the presence of the arresting officers. (Id. at 11, 40.) Mr. King acknowledged that he understood his rights, signed an ATF waiver form, and agreed to be interviewed. Agent Fyock conducted the interview of Mr. King. (Id. at 14, 40-42.)

11. Mr. King told Agent Fyock that he bought the car four days ago for $400 dollars from an unknown male whom he described as "slim and dusty looking" around 35 years old. After the sale, the seller was driven to Philadelphia Pike near the State Police

Trooper Barracks. Mr. King informed police that the title of the vehicle was in his coat pocket at home. (Id.)

12. Because Mr. King was also a probationer, an administrative search of his home was conducted. The title of the vehicle was located in Mr. King's coat pocket.

13. Based on Mr. King's statements, ATF Special Agent Paul Gemmato conducted a follow-up investigation and located the seller of the vehicle. The seller confirmed that he had sold his white four door Chevrolet Caprice for four hundred dollars to a man matching Mr. King's description. After the interview, the seller was given a photograph of Mr. King, and the seller identified Mr. King as the purchaser of the vehicle. (Id. at 51-54.)

III. CONCLUSIONS OF LAW

    A.   Whether Mr. King Is Entitled To The Suppression Of Physical Evidence And Statements

14. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ." U.S. Const, amend IV.

15. A defendant who files a motion to suppress ordinarily carries the burden of proof. Rakas v. Illinois, 439 U.S. 128, 130 n. 1 (1978). However, where a search is conducted without a warrant, as is the case here, the burden shifts to the Government to demonstrate by a preponderance of the evidence that the search was conducted pursuant to one of the exceptions to the warrant

5

requirement. See United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992). Evidence obtained pursuant to a warrantless search that does not meet an exception to the warrant requirement must be suppressed as "fruit of the poisonous tree." United States v. Brown, 448 F.3d 239, 244 (2006) (citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)).

16. Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 (1968). During a traffic stop, the temporary detention of individuals, including the passengers of the automobile, constitutes a "seizure" within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809 (1996); United States v. Mosley, 454 F.3d 249 (3d Cir. 2006) ("[A] traffic stop is a seizure of everyone in the stopped vehicle.").

17. Reasonable suspicion requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them

6

that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003). Whether the police have reasonable suspicion is determined from the totality of the circumstances. Cortez, 449 U.S. at 417. In evaluating whether a particular search was reasonable, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. 21-22.

18.  The sole basis for Mr. King's Motion To Suppress is that the initial stop of his vehicle was invalid under Terry. Based on the totality of the circumstances in this case, the Court concludes that Master Corporal Armorl and Patrolman Scholl had reasonable suspicion concerning the violation of Delaware's motor vehicle registration laws to stop the vehicle driven by Mr. King. In reaching this conclusion, the Court credits the testimony of Master Corporal Armorl and Special Agent Fyock, who offered additional explanation concerning vehicle registration procedures based upon his previous experience as a New Castle County Police Officer for more than seven years.

19. There is no reasonable expectation of privacy in a license plate number which is displayed in plain view, and it is not illegal for a police officer to use license plate information to conduct a check on the vehicle's ownership and registration. See e.g., United States v. Diaz-Castaneda, 494 F.3d 1146, 1148, 1150-1152 (10th Cir. 2007); United States v. Ellison, 462 F.3d 557, 561-563 (6th Cir. 2007) (collecting cases). In this case, Master Corporal Armorl's vehicle check provided him with the information that the car driven by Mr. King had been unregistered since January 2007. As Master Corporal Armorl and Agent Fyock explained, the vehicle was transferred at that time, and upon transfer, the vehicle's registration expires in accordance with 21 Del. C. § 2501.[2] (Tr. 19 ("[T]he vehicle is unregistered

---

[2]   Agent Fyock also accurately explained the sequence of events relevant to vehicle title transfer and registration as follows:

> Q;   What happens when a vehicle changes title?
>
> A:   Once the title is received, once the registration is received from the seller by Motor Vehicle, it's reported transferred in the DELJIS system. And until the new owner registers, properly registers that motor vehicle with the title, the signed title or documentation saying that they purchased it, that vehicle will be either transferred, come up as transferred and/or [an] unregistered motor vehicle.
>
> Q:   What does that indicate about that registration of that vehicle?
>
> A:   It is not registered until the new owner completes the proper paperwork.

8

upon transfer of title."), 22-23 ("[The vehicle] was reported transferred in January. That tells me that the vehicle has been unregistered since January . . ."), 23 ("I know that the vehicle's reported transferred. That tells me the vehicle is unregistered.") 29-30 (explaining that transfer date on the computer shows that the "new owner didn't register his vehicle with the Department of Motor Vehicle. That makes it unregistered.")) Because no new registration was ever obtained for the vehicle, Mr. King was operating an unregistered vehicle in violation of Delaware law. See 21 Del. C. § 2503 ("The transferee, <u>before operating or permitting the operation of a motor vehicle which has been transferred to such transferee upon a highway</u>, shall apply for a transfer of title, obtain the registration of the vehicle as upon original registration, submit the vehicle to inspection and obtain new registration plates and new number plates as provided in this title.") (emphasis added). Once Master Corporal Armorl realized the vehicle was unregistered, he was entitled to stop the vehicle for a traffic violation.

20. After lawfully stopping the unregistered vehicle, Master Corporal Armorl further learned that Mr. King was driving

---

    Q:   That's a violation of the Motor Vehicle laws?

    A:   Correct.

(Tr. 38-39.)

9

with a suspended license and was wanted in connection with other traffic violations. These additional violations, along with the capias for Mr. King's arrest, provided the police officers with probable cause to arrest Mr. King.

21. In addition, the Court concludes that the evidence seized from the trunk of Mr. King's car is admissible. Mr. King does not allege any bad faith motive on the part of the officers in connection with this search, and the Court finds, based upon the testimony of Master Corporal Armorl, that the search was reasonable and conducted in good faith in accordance with the standard policies and procedures of the Wilmington Police Department for towed vehicles. See Colorado v. Bertine, 479 U.S. 367 (1987).

22. As for Mr. King's statements, the Court likewise concludes that his statements both pre- and post-Miranda warnings are admissible. The Court finds that Mr. King's pre-Miranda warning statement was made spontaneously and voluntarily, and therefore, the Court concludes that the statement is admissible evidence. Miranda v. Arizona, 384 U.S. 436, 444 (1966). In addition, the Court finds that Mr. King voluntarily, intelligently and knowingly waived his Miranda rights, and therefore, his subsequent statements to law enforcement are also admissible. Moran v. Burbine, 475 U.S. 412, 421 (1986). Accordingly, the Court will deny Mr. King's Motion To Suppress

Physical Evidence And Statements.

    B.    <u>Whether Mr. King Is Entitled To The Exclusion Of Identification Evidence</u>

    23.    As for Mr. King's challenge to the out-of-court and in-court identification of him by the seller of the vehicle, the Court likewise concludes that Mr. King is not entitled to the exclusion of this evidence. An unnecessarily suggestive identification procedure does not violate due process so long as the identification demonstrates sufficient aspects of reliability. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 106 (1977). Reliability is considered the "linchpin in determining the admissibility of identification testimony." <u>Id.</u> at 114. The Court must consider the totality of the circumstances in determining whether an identification was reliable despite suggestiveness in the identification procedure. Among the factors to be considered are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation. <u>Neil v. Biggers</u>, 409 U.S. 188, 198-99 (1972).

    24.    In this case, the seller was not a victim of a crime, and therefore, he was under no particular stress or duress at the time he was questioned by ATF Agent Gemmato. The seller engaged

11

Mr. King in a business transaction concerning the car, and therefore, his observation of Mr. King was not a transient sighting. Moreover, only ten days had elapsed between the time the seller engaged Mr. King in the sale of the car to the time of Agent Gemmato's questioning. Further, Mr. King provided an accurate description of the seller, and the seller provided Agent Gemmato with a reasonably accurate description of Mr. King before being shown Mr. King's picture.

25. In sum, the Court concludes that the circumstances concerning the seller's identification of Mr. King demonstrate that the identification was sufficiently reliable to allow its admission into evidence. Of course, Mr. King is free to cross-examine any identification witnesses to bring out weaknesses in their testimony; however, no weaknesses have been identified at this stage which are sufficient to warrant the wholesale exclusion of all identification evidence. Accordingly, the Court will deny Mr. King's Motion To Suppress Out-Of-Court Identification And To Preclude Identification At Trial.

## IV. CONCLUSION

For the reasons discussed, the Court will deny Mr. King's Motion To Suppress Physical Evidence And Statements and his Motion To Suppress Out Of Court Identification And To Preclude Identification At Trial.

An appropriate Order will be entered.